RECEIVED
SEP - 2 2016
U.S. District Court
Eastern District of MO

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDDIE LEE BECTON, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Number: |
| ) | **JURY TRIAL DEMANDED** |
| ST. LOUIS REGIONAL PUBLIC ) | |
| MEDIA, INC., d/b/a NINE NETWORK ) | |
| OF PUBLIC MEDIA, and ) | |
| ) | |
| JACK GALMICE III, and ) | |
| ) | |
| RICHARD ("DICK") SKALSKI, and ) | |
| ) | |
| AMY SHAW, ) | |
| ) | |
| Defendants. ) | |

Serve: St. Louis Regional Public Media
   3655 Olive Street
   St. Louis, MO 63108

Serve: Richard "Dick" Skalski
   3655 Olive Street
   St. Louis, MO 63108

Serve: Jack Galmiche
   3655 Olive Street
   St. Louis, MO 63108

Serve: Amy Shaw
   3655 Olive Street
   St. Louis, MO 63108

**COMES** NOW Plaintiff, Eddie Lee Becton, II, and for his cause of action against Defendants St. Louis Regional Public Media, Inc., /b/a Nine Network of Public Media, and Jack Galmiche III and Richard "Dick" Skalski and Amy Shaw, (collectively referred to as "Defendants"), states as follows:

1

## INTRODUCTION

1. This is an action brought pursuant to the 42 U.S.C § 1981, Civil Rights Act, 29 U.S.C. § 14 Age Discrimination in Employment Act, and separate common law theories of recovery.

2. The unlawful employment practices alleged herein were committed by Nine Network Media, Jack Galmiche III, Amy Shaw, and Richard "Dick" Skalski.

## PARTIES

3. Plaintiff, Eddie Lee Becton, II (hereinafter referred to as "Plaintiff" or "Becton") is a resident of the City of St. Louis, residing in the Eastern District of Missouri.

4. Plaintiff is an African-American.

5. Plaintiff is over forty (40) years of age.

6. Plaintiff holds two Masters Degrees, with a B.A. in Psychology.

7. Defendant St. Louis Regional Public Media, Inc., is a Missouri nonprofit corporation doing business as Nine Network of Public Media ("NNPM") with its principal place of business located within the city of St. Louis, at 3655 Olive Street, St. Louis, Missouri 63108.

8. Defendant Jack Galmiche III is president and owner of St. Louis Regional Public Media, Inc. (hereinafter referred to as "STLRPM").

9. Defendant Richard "Dick" Skalski is Vice President of STLRPM, and Chief Financial Officer and Human Resources Director for Nine Network of Public Media.

2

10. Defendant Amy Shaw is Senior Vice President of STLRPM and a duly appointed authorized agent and employee of Nine Network of Public Media (hereinafter referred to as "NNPM").

## FACTUAL BACKGROUND

11. At all times herein relevant, Plaintiff was gainfully employed as a Senior Evaluation Associate for NNPM.

12. Plaintiff's employment with NNPM began on January 5, 2015.

13. Plaintiff's employment with NNPM was terminated on July 23, 2015.

14. At all times herein relevant Plaintiff was an "at-will" employee as that term is defined under Missouri law.

15. At all times herein relevant Amy Shaw was a duly appointed agent and employee of defendant NNPM with the capacity to bind NNPM legally.

16. At all times herein relevant Jack Galmiche was a duly appointed agent and employee of defendant NNPM with the capacity to bind NNPM legally.

17. At all times herein relevant Richard "Dick" Skalski was a duly appointed agent and employee of defendant NNPM with the capacity to bind NNPM legally.

18. Plaintiff is informed and believes, and thereon alleges, that each of the defendants herein was, at all times relevant to this action, the agent, employee, representing partner, or joint venturer of the remaining defendants, acting within the course and scope of that relationship.

19. Plaintiff is further informed and believes, and thereon alleges, that each of the defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining defendants.

20. From January 5, 2015 to July 23, 2015, Plaintiff was employed by defendant NNPM as a Senior Evaluation Associate.

21. Plaintiff alleges herein that Defendants, acting jointly and severally, violated a clear mandate of public policy, state and federal law by, *inter alia*, wrongfully terminating Plaintiff's employment and conditioning Plaintiff's continued employment on Plaintiff violating the law and a clear mandate public policy by requiring Plaintiff to falsify data for the purpose of deceiving state, federal, and private funding sources into the false belief that funded programs were more effectual than was actually the case, at the specific behest of Amy Shaw.

22. Defendant STLRPM derives funds from contributions from federal entities, private individuals, public entities, and corporate donors.

23. Defendant STLRPM's funding sources require Defendant NNPM to collect and maintain data for the purpose of measuring the efficacy of NNPM's programs.

24. On information and belief, if NNPM's collected data reveal that NNPM programs are ineffectual, then funding sources will divert funds away from NNPM.

25. Accordingly, NNPM has a very strong incentive to collect and maintain data that are favorable to funding sources so as to increase the likelihood of continued funding.

26. If data are unfavorable vis-à-vis NNPM programs, then funds will be diverted away from NNPM and STLRPM.

27. From March 22, 2016 until Plaintiff's wrongful termination, Plaintiff reported to Amy Shaw.

28. Amy Shaw is an employer as that term is defined under Missouri law.

29. Plaintiff developed reports for Jack Galmiche and "Dick" Skalski, the latter being Director of Human Resources, and an employer as that term is defined under Missouri law.

30. From April 2015 through May 2015, Plaintiff complained to the Director of Evaluation, Courtney Dowdall, who is not named as a defendant herein, that the culled data was false and did not lead to the conclusion sought by Amy Shaw. Courtney Dowdall's response to my complaint was, "***I know there are problems with the data and there are inconsistencies. But, the best thing we can do is make sure future data are accurate.***"

31. On June 1, 2015, Plaintiff met with Scheri Cox, Human Resources Administrator, who is not named as a defendant herein, and in that meeting Ms. Cox stated to Plaintiff, "***You are not the first person to complain about Amy Shaw***." Ms. Cox referred me to Richard "Dick" Skalski.

32. Thereafter, I met with Richard "Dick" Skalski and made complaints about false data, to which Richard "Dick" Skalski replied, "***Frankly Eddie, there have been several people who have complained about Amy***." Mr. Skalski informed me that he would follow up, but he never did.

33. On May 26, 2015, I met with Amy Shaw and she stated, "I do not want to reinforce the narrative that West St. Louis County is in good shape because it is not. We need to rework the data language in terms of West St. Louis County, now that I live there." Amy instructed me to revise my data language so that West County, despite its many resources, would be more like the City of St. Louis with its meager resources.

5

34. Amy Shaw's instructions to me were given for the sole purpose of deluding funding sources into the false belief that culled data indicated that West St. Louis County was not in good shape, like the City of St. Louis.

35. Funding would be redirected away from Defendant if culled data were reported accurately.

36. On June 25, 2015, I discovered a major flaw in the reporting of survey data and I informed Courtney Dowdall that survey responses were being inflated by including incomplete surveys in the data instead of completed surveys. This led to false data reports.

37. Courtney Dowdall directed me to change data for a Word Cloud presentation for the Corporation for Public Broadcasting staff. The actual data revealed a negative perception of Corporation for Public Broadcasting and NNPM programming among Viewer/Listener survey participants at Detroit Public Television, among others.

38. Courtney Dowdall directed me to "*__rework__*" the data to include "*__more favorable responses from survey participants.__*"

39. In mid-June 2015, in a meeting with Amy Shaw, Plaintiff expressed concern about the inaccuracy of the data, and Amy Shaw responded to my concerns by stating, "*__Eddie, everyone who has disagreed with me is no longer here.__*"

40. In another June 2015 meeting with Amy Shaw, she informed Plaintiff that, "*__You need to change and soften the data language because we want to avoid such words as "dismal" because the culture here is to always present as positively as possible despite what the data reveal.__*"

6

41. On July 14, 2015, Plaintiff reported the falsely inflated survey results to Amy Shaw, Plaintiff's supervisor.

42. On May 26, 2015, Plaintiff made an oral presentation to Amy Shaw on the process of "GPS Mapping."

43. On May 26, 2015, during Plaintiff's presentation to Amy Shaw on GPS Mapping, Amy Shaw stated, "I do not like those questions; they sound kind of bullshitty."

44. On May 26, 2015, Amy Shaw stated, "I do not want to enforce the narrative that West St. Louis County is in good shape because it isn't. We need to rework the data language in terms of West St. Louis County, now that I [Amy Shaw] live there."

45. On May 26, 2015, Amy Shaw instructed me to "revise the language so that West County, despite its many resources, [is] more like the city of St. Louis, with its meager resources."

46. No action was taken against Amy Shaw.

47. Plaintiff's data collection, maintenance and reporting were all in accordance with generally accepted standards, and further, in compliance with NNPM policies and procedures.

48. Amy Shaw's actions, in terminating Plaintiff were unlawful, unethical, and in violation of public policy, in that they were done for the reason that Plaintiff refused to engage in unlawful or prohibited data collection and reporting; and because Plaintiff is of African-American descent.

49. Amy Shaw informed Plaintiff that "funders want to see that there money is working, and we need to make this work" - the implication being, Plaintiff should alter unfavorable data to make it look favorable data to/for funders.

50. Amy Shaw's actions violate a clear public policy and are arguably fraudulent vis-a-vis funding sources, which include, but are not limited to, public funds.

## COUNT I – CIVIL RIGHTS VIOLATIONS, 42 U.S.C. §1981

51. Plaintiff hereby repleads all paragraphs above as if fully set forth here.

52. 42 U.S.C. § 1981 states as follows: (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other; **(b) "Make and enforce contracts" defined** -- For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship; **(c) Protection against impairment**: The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

53. Defendants' action pleaded herein are discriminatory based on Plaintiff's race, and the stated reasons for Defendant's actions are pretextual.

## COUNT II – AGE DISCRIMIANTION IN EMPLOYMENT ACT, 29 U.S.C. §621

54. Plaintiff hereby repleads all paragraphs above as if fully set forth here.

8

55. **29 U.S.C. §621** states as follows: **(a)** The Congress hereby finds and declares that— **(1)** in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs; **(2)** the setting of arbitrary age limits regardless of potential for job performance has become a common practice, and certain otherwise desirable practices may work to the disadvantage of older persons; **(3)** the incidence of unemployment, especially long-term unemployment with resultant deterioration of skill, morale, and employer acceptability is, relative to the younger ages, high among older workers; their numbers are great and growing; and their employment problems grave; **(4)** the existence in industries affecting commerce, of arbitrary discrimination in employment because of age, burdens commerce and the free flow of goods in commerce. **(b)** It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age; ***to prohibit arbitrary age discrimination in employment***; to help employers and workers find ways of meeting problems arising from the impact of age on employment. (Emphasis added).

56. Defendant's actions pleaded herein are unlawful and done for the reason that Plaintiff is over the age of forty (40).

57. During Plaintiff's initial job interview, Amy Shaw asked Plaintiff his age after Plaintiff was selected by former Director of Evaluation, Charles Gasper, to serve as Senior Evaluation Consultant.

## COUNT III – VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. 2601 et seq

58. Plaintiff hereby repleads all paragraphs above as if fully set forth here.

59. 29 U.S.C. 28, §2601 states as follows: (a) Restoration to position- **(1)** Except as provided in subsection (b) of this section, any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave— **(A)** to be restored by the employer to the position of employment held by the employee when the leave commenced; or **(B)** to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

60. On July 23, 2015, Plaintiff visited a podiatric surgeon for care as a result of an Achilles injury; and the surgeon placed a cast on Plaintiff's leg.

61. Plaintiff returned to work at NNPM after the aforementioned visit, and upon Plaintiff's return to work, Plaintiff informed Courtney Dowdall, Director of Evaluation, that he (Plaintiff) had just returned from a doctor's appointment.

62. Plaintiff also informed Courtney Dowdall that Plaintiff's surgeon prescribed pain medication and immediate time off from work for a period of two (2) weeks so that Plaintiff's injury would not be exacerbated prior to a scheduled surgery.

63. Approximately fifteen (15) minutes after Plaintiff informed Courtney Dowdall of Plaintiff's doctor's work restriction, Courtney Dowdall directed Plaintiff to meet with Richard "Dick" Skalski and Amy Shaw, which Plaintiff, in fact, did.

64. During Plaintiff's meeting with Richard "Dick" Skalski and Amy Shaw, Mr. Skalski and Ms. Shaw informed Plaintiff that Plaintiff's employment was being terminated.

65. Defendants offered no "reasonable accommodation" to Plaintiff.

66. Defendant has greater than twenty (20) employees.
67. Defendants are employers covered by the Family and Medical Leave Act pursuant to 29 USC 2601 et seq.
68. In May 2009, Plaintiff was entitled to leave under the Family and Medical Leave Act, pursuant to 29 CFR 825.114.
69. Defendants engaged in prohibited conduct under the FMLA by interfering with, restraining, or denying Plaintiffs' rights provided under the Act.
70. Defendants' action foreclosed Plaintiff's rights under the FMLA, including but not limited to the right to be returned to his position; the right to reasonable accommodation, and the right to be free from threats and harassment for exercising her rights under the law.
71. Defendants' actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.
72. As a direct and proximate result of Defendants' actions, Plaintiffs sustained injuries and damages.

## COUNT IV – WRONGFUL DISCHARGE (VIOLATIONS OF PUBLIC POLICY)

73. Plaintiff hereby repleads all paragraphs above as if fully set forth here.
74. The court has jurisdiction over this claim pursuant to 28 U.S.C. §1367.
75. It is the public policy of the state Missouri that employees cannot be terminated nor can an employer take any action against an employee in retaliation if an employee takes any action that the employee is lawfully allowed to take.

76. After Plaintiff complained to Defendants and Defendant Amy Shaw's supervisor's that Defendant's were defrauding funders, Plaintiff's employment was terminated in retaliation.

77. Defendants were admonished on two (2) separate occasions by the Missouri Attorney General's Office for taking substantially similar action complained of here.

78. Defendants were requested to return in excess of $400,000.00 based on Defendant's false accounting practices.

**WHEREFORE**, Plaintiff prays judgment against Defendants, and each of them, jointly and severally, and in excess of $75,000.00, as follows:

1. For damages for breach of contract according to proof, including lost earnings and other employee benefits, past and future;

2. For compensatory damages according to proof, including lost earnings and other employee benefits, including, but not limited to, costs of seeking other employment, and damages for emotional distress, humiliation, and mental anguish;

3. For interest on lost earnings and benefits at the prevailing legal rate from the date of Plaintiff's termination;

4. For punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

5. For reasonable attorney's fees if incurred by Plaintiff in obtaining the benefits due him;

6. For costs of suit incurred by Plaintiff; and

7. For such other and further relief as the court deems proper.

Respectfully submitted,

*Eddie Becton*
Eddie Lee Becton, II
Plaintiff
5970 Mimika Avenue
St. Louis, MO 63147
314-389-7214
# Best (323) 403-7500

**VERIFICATION**

I, Eddie Lee Becton, II, am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters that are therein alleged on information and belief, and as to those matters, I believe it to be true. I declare under penalty of perjury under the laws of the State of Missouri that the foregoing is true and correct.

*Eddie Becton*
Eddie Lee Becton, II

13